UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------x Docket No.
LAWRENCE APPEL,

                                                    Plaintiff,

            -against-                                                    COMPLAINT

THE COUNTY OF NASSAU, NCPD OFFICER                        JURY TRIAL
NICHOLAS COLLINS (8946) a/k/a JASON COLLINS,              DEMANDED
 NCPD OFFICER FRANK PARENTE, and NCPD
DETECTIVE JOHN CHRISTIE

                                                    Defendants.
------------------------------------------------------------------------------------x
                    Plaintiff, LAWRENCE APPEL, by his attorney, Ralph G. Reiser, Esq.,

complaining of the defendants alleges upon information and belief, as follows:

                                    NATURE OF THE ACTION

            1. This is an action on behalf LAWRENCE APPEL, who is profoundly deaf and

communicates through American Sign Language. M. Appel arrested on July 3, 2016 at

approximately 12:30 A.M. by defendants Nassau County Police Officer Nicholas Collins (8946)

a/k/a Jason Collins (hereinafter Nicholas Collins) and Nassau County Police Officer Frank

Parents at the direction of Nassau County Police Detective John Christie.  The arrest was made in

the plaintiff's residence without a warrant and in the absence of probable cause.  From the time

of his arrest on July 3, 2016 to the time of his release on an appearance ticket at approximately

5:00 A.M. on July 3, 2016 Mr. Appel was never provided with a qualified sign language

interpreter, despite repeated requests and demands for the assistance of a sign language

interpreter made by Mr. Appel and on his behalf by his brother and father.  Defendants

improperly questioned and took written communications from the plaintiff without providing

him with a qualified sign language interpreter and physically assaulted and battered plaintiff

while he was in their custody.  This Complaint states causes of action under federal, state, and county laws for assault, battery, violations of civil rights under color of law and for discrimination on the basis of disability. It also states causes of action in tort under common law.

JURISDICTION

2.  Jurisdiction is specifically conferred on the United States District Court by 28 U.S.C. 1331, this being an action arising under the Constitution and Federal Law and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  The Federal Statutes under which the claims arise are the Americans with Disabilities Act, ("ADA"), 42 U.S.C. 12-101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. 794, this being an action to recover for unlawful discriminatory practices on the basis of disability as well as 28 U.S.C. 1343(a)(3), this being an action to redress the deprivation, under color of statute, ordinance, rule, regulation, custom and/or usage, of rights, privileges and immunities secured to plaintiff by the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and by 42 U.S.C. 1983. Pursuant to 28 U.S.C. 1367 pendent jurisdiction and supplementary jurisdiction are asserted over plaintiff's state law claims pursuant to the New York State Human Rights Law, (NYS Executive Law-Article 15), and the Nassau County Human Rights Law, and the common law.

3.  The amount in controversy exceeds $150,000.

4.  Venue is laid within the United States District Court for the Eastern District of New York in that one or more of the defendants, including the defendant County of Nassau reside in said district. 28 U.S.C. 1391 (b) (1).

2

**PARTIES**

5. At all times hereinafter mentioned, Plaintiff Lawrence Appel was and still is a resident of the County of Nassau, State of New York.

6. At all times hereinafter mentioned, Defendant County of Nassau was and still is a duly incorporated county of the State of New York, and a resident of the County of Nassau.

7. At all times hereinafter mentioned, the Defendant County of Nassau owned, operated, maintained an controlled a police department known as the Nassau County Police Department (NCPD).

8. Upon information and belief, at all times hereinafter mentioned, the defendant Police Officer Jason Collins was a resident of the County of Nassau, State of New York.

9. Upon information and belief, at all times hereinafter mentioned, the defendant Police Officer Jason Collins was a Police Officer employed by the NCPD.  He is sued in his individual and official capacities.

10. Upon information and belief, at all times hereinafter mentioned, the defendant Police Officer Frank Parente was a resident of the County of Nassau, State of New York.

11. Upon information and belief, at all times hereinafter mentioned, the defendant Police Officer Frank Parente was a Police Officer employed by the NCPD.  He is sued in his individual and official capacities.

12. Upon information and belief, at all times hereinafter mentioned, the defendant NCPD Detective John Collins was a resident of the County of Nassau, State of New York.

13. Upon information and belief, at all times hereinafter mentioned, the defendant NCPD Detective John Collins was a detective employed by the NCPD.  He is sued in his

individual and official capacities.

## FACTUAL ALLEGATIONS

14.  Plaintiff Lawrence Appel is a profoundly deaf, speech impaired individual who communicates through American Sign Language ("ASL").  As such, he is a qualified individual with a disability as defined by both, the ADA, 42 U.S.C. 12102(2) and the Rehabilitation Act, 29 U.S.C 704 AND 705 and he further qualifies as a person with a disability and/or disabled person under the New York State Human Rights Law, (Executive Law Sec. 292) and the Nassau County Human Rights Law.

15. On July 3, 2016, Plaintiff was arrested by defendant Police Officers Jason Collins and Frank Parente  of the Nassau York County Police Department at the directive of Nassau County Detective John Christie.

16.  The arrest of the plaintiff took place in his residence.

17.  The arrest of the plaintiff was made without a warrant.

18.  The arrest of the plaintiff was made without probable cause.

19.  Prior to proceeding to the plaintiff's residence to effectuate his arrest, the defendant police officers and detective were aware that plaintiff was deaf.

20.  Defendants made no attempt to secure the services of a qualified sign language interpreter prior to proceeding to the plaintiff's home to effectuate his arrest.

21.  Upon arrival at the plaintiff's home, the defendant police officers entered plaintiff's home without his consent pr the consent of the owner of the premises and in disregard of plaintiff's brother's request that they wait outside while he went to locate the plaintiff.

22.  At the time they arrested plaintiff, the defendant police officers were told by

4

the plaintiff's brother and father that he was deaf and required the assistance of a qualified sign language interpreter.

23.   The defendant police officers assured the plaintiff's father and brother that plaintiff would be provided with a sign language interpreter upon arrival at the precinct.

24.   From the time of his arrest and throughout the time of his confinement at the Second Squad, plaintiff requested the assistance of a qualified sign language interpreter.

25.   From the time of his arrest and throughout the time of his confinement at the Second Squad, plaintiff was questioned by the defendant police officers and detective and compelled to engage in written communications with them without the assistance of a qualified sign language interpreter.

26.   In the absence of a qualified sign language interpreter, plaintiff was never advised of his rights under People V Miranda.

27.   At various times during the period of his confinement, the defendant police officers ridiculed, mocked and demeaned plaintiff due to his disability. assaulted and battered plaintiff and did so without plaintiff's consent.

28.   At all times from the time of his arrest until the time of his release with an appearance ticket on July 3, 2016 at approximately 5 A.M. plaintiff was deprived of his liberty against his will and without his consent.

29.   At all times relevant to this action the defendant police officers and detective were acting within the scope of their employment by the Nassau County Police Department.

30.   Since plaintiff is profoundly deaf, he was unable to effectively communicate with defendant police officers and detective. Plaintiff was denied the opportunity to be provided

5

with reasonable accommodations and effective communication, the type of communication which a hearing individual in plaintiff's position would have been able to engage in.

31.  Plaintiff was also not advised that he had a right to utilize a Teletypewriter for the Deaf (TTY) and Videophone which are required to be provided to deaf citizens and arrestees and detainees and with which he could have contacted an attorney, and plaintiff was thereby deprived of his right to counsel and the same right to communication as is afforded to non-deaf citizens and arrestees and detainees.

32. Plaintiff was distressed for hours because he was unable to communicate on his own behalf with the defendants and did not know how long she would be held in confinement, how he would be able to communicate effectively on his own behalf, how he would be dealt with, and when, if ever, he would be released or brought before a judge.

33.  Prior to the commencement of this action and within 90 days of the date on which the claims arose and in connection with plaintiff's state law claims for false arrest and assault and battery against defendants plaintiff filed a timely Notice of Claims with the Office of the Nassau County Attorney.

34.  Following receipt of a demand served by the Office of the County Attorney pursuant to General Municipal Law Section 50-h requiring plaintiff to submit to a hearing concerning plaintiffs claims, plaintiff's counsel informed the County Attorney's Office that a sign language interpreter would be required.  As a result, the 50-h hearing was adjourned in order for the County to arrange for a sign language interpreter to be present at the hearing.  The County Attorney has never rescheduled that hearing and has thereby waived the defendants' right to such a hearing.

## AS AND FOR A FIRST CAUSE OF ACTION

VIOLATION OF THE REHABILITATION ACT

(COMPENSATORY & PUNITIVE DAMAGES)

35.   Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

36.   At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 was in full force and effect and applied to the Defendant County in its dealings with plaintiff.

37.   At all times relevant to this action, the  regulations implementing Section 504 of the Rehabilitation Act, 28 CFR 45.501 et seq. and 28 CFR 42.106 - 42.110  were in full force and effect and applied to the Defendant County in its dealings with plaintiff.

38.   At all times relevant to this action, Plaintiff was and is an "otherwise qualified individual with a disability" within the meaning of the Rehabilitation Act and the regulations promulgated thereunder, including at 28 C.F.R. Part 45,  in that plaintiff is profoundly deaf, unable to speak orally and primarily communicates in American Sign Language.

39.   At all times relevant to this action, Defendant County of Nassau and its Police Department were recipients of federal funds within the meaning of the Rehabilitation Act and had 15 or more employees.

40.   At all times relevant to this action, Defendant County of Nassau and its Police Department were subject to the provisions of the Rehabilitation Act and Section 504 thereof.

41.   Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides: "No

otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance".

42.   Under the federal regulations promulgated pursuant to the Rehabilitation Act, a recipient of federal assistance must provide disabled individuals with  effective communication by means of auxiliary aids and services including qualified sign language interpreters and TDDs, to deaf individuals. A qualified sign language interpreter under the regulations is one who is impartial and can communicate effectively with the deaf individual.  The failure to provide such accommodations constitutes discrimination under the Rehabilitation Act.

43.   Defendants violated the Rehabilitation Act and its regulations in failing to ensure that their services, programs and activities were accessible to qualified individuals with hearing impairments and plaintiff in particular through the use of appropriate auxiliary aids and services, including, but not limited to, the provision of qualified sign language interpreters and TDD's; in failing to provide qualified individuals with hearing impairments and plaintiff in particular, with the opportunity to place calls through the use of appropriate auxiliary aids and services, including, but not limited to, qualified sign language interpreters and TDDs and/or Videophones in a situation where the NYPD would allow a hearing person access to a telephone; in failing to provide qualified individuals with a hearing impairment, and plaintiff in particular, with appropriate auxiliary aids and services, including, but not limited to, qualified interpreters, when necessary to provide effective communication; in failing to maintain a list of "on-call" qualified sign language interpreters who are available 24 hours a day; in failing to provide plaintiff with a qualified sign language interpreter within a reasonable time after the request was

made; in failing to assure that sign language services would be available 24 hours a day; in failing to give primary consideration to the requests of qualified individuals with hearing impairments, and plaintiff in particular, in determining what type of auxiliary aid or service is necessary; in failing to provide plaintiff with notice of the availability of auxiliary aids and services for qualified individuals with hearing impairments through the distribution of pamphlets, posters or other appropriate means, including, but not limited to copies of the publication "The Americans with Disabilities Act What You Should Know;" in failing to provide plaintiff with a sign language interpreter who was able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary, in failing to provide plaintiff with an interpreter able to sign to the deaf individual, and plaintiff in particular, or interpret in sign language to the deaf person what was being said by the hearing person and to voice to the hearing person what was being signed or said by the deaf individual, and plaintiff in particular; in failing to provide plaintiff with an interpreter able to interpret in the language the plaintiff uses; and in failing to provide plaintiff with communication that was as effective as communication with others who are not deaf or hearing impaired.

44.   Defendants, their agents, servants and/or employees excluded plaintiff  from participation in, and denied him the benefits of its programs and activities, and subjected to discrimination solely on the basis of his disability at the time of hi arrests and period of confinement in failing and refusing to provide him with effective communication in the form of a qualified sign language interpreter, in failing to provide plaintiff with the same law enforcement services that the Defendants provide to other non-disabled persons, arrestees and detainees, in failing to provide plaintiff with telephonic or other effective communication devices such as

TTY's/TDD's and videophones which would enable plaintiff to have the same opportunities for communication with counsel, family, and friends as were available to non-disabled arrestees and detainees, in failing to provide police officer assistance in making phone calls, in failing to provide plaintiff with a means to hear and otherwise be provided with information verbally and orally provided to non-disabled arrestees and detainees, in failing to provide plaintiff with the same opportunities to communicate with those in whose custody he was being held as were provided to non-disabled individuals and in causing plaintiff to be isolated and humiliated due to the lack of effective communication during his arrest and period of confinement.

45.   Defendant's failure and refusal to ensure effective communication with and for Plaintiff as hereinbefore alleged constituted discrimination against Plaintiff on the basis of his disability in violation of Section 504 of the Rehabilitation Act.

46.  Defendant's violations of the Rehabilitation Act mentioned above deprived plaintiff of the accommodations to which he was entitled and were intentional and the product of defendant's deliberate indifference to the strong likelihood that its policies and conduct would likely result in a violation of federally protected rights.

47.  The actions and omissions of Defendant and/or its agents, servants and employees occurred under circumstances giving rise to an inference of discrimination.

48.  Defendant, its agents, servants and/or employees intentionally discriminated against plaintiff and/or were deliberately indifferent towards plaintiff's rights.

49.  The intentional nature of the violations of the Rehabilitation act on the part of the defendant County, its agents, servants, employees, and police officers, and their deliberate indifference is demonstrated by the fact that their conduct, as hereinbefore alleged, constituted a

direct violation of the provisions of the Rehabilitation Act of 1973, a statute in effect for more than 40 years prior to the events complained of herein, and its regulations as well as policies and procedures promulgated by the Police Commissioner or his authorized representatives.

50.  The County of Nassau is liable for the acts and omissions of its police officers pursuant to principles of agency and respondeat superior.

51.  As a direct and proximate result of defendant's discriminatory conduct. Plaintiff suffered adverse consequences and was caused to endure severe and extreme anxiety, humiliation, depression and emotional pain all to his damage.  Plaintiff  has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of discrimination.

52.  Plaintiff has thereby been damaged by the violation of the Rehabilitation Act on the part of the defendants, their agents, servants and/or employees and demands compensatory damages in the sum of One Million Dollars and punitive damages in the sum of One Million Dollars and together with attorneys' fees and the costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION

VIOLATION OF TITLE II OF THE ADA

(COMPENSATORY & PUNITIVE DAMAGES)

53.  Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

54.  At all times relevant to this action, the ADA, 42 U.S.C. §§ 12101, *et seq.* was in full force and effect and applied to defendants' conduct in its dealings with plaintiff.

11

55.   At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 CFR 35, were in full force and effect and applied to the defendants' conduct in its dealings with plaintiff.

56.   At all times relevant to this action, plaintiff was and is profoundly deaf and primarily communicates in American Sign Language and was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12102(2).

57.   At all times relevant to this action, the defendant County of Nassau and its Police Department were public entities within the meaning of Title II of the ADA.

58.   The objective of the ADA is to eliminate discrimination against individuals with disabilities.  Section 202 of the ADA, 42 U.S.C. § 12132 provides that "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."

59.   Under the federal regulations promulgated pursuant to the Americans With Disabilities Act, a public entity must provide disabled individuals with  effective communication by means of auxiliary aids and services including qualified sign language interpreters and TDDs, to deaf individuals. A qualified sign language interpreter under the regulations is one who is impartial and can communicate effectively with the deaf individual.  The failure to provide such accommodations constitutes discrimination under the Rehabilitation Act.

60.   Defendants violated Title II of the ADA, and its regulations in failing to ensure that their services, programs and activities were accessible to qualified individuals with hearing impairments and plaintiff in particular through the use of appropriate auxiliary aids and services,

12

including, but not limited to, the provision of qualified sign language interpreters and TDD's; in failing to provide qualified individuals with hearing impairments and plaintiff in particular, with the opportunity to place calls through the use of appropriate auxiliary aids and services, including, but not limited to, qualified sign language interpreters and TDDs and/or Videophones in a situation where the NYPD would allow a hearing person access to a telephone; in failing to provide qualified individuals with a hearing impairment, and plaintiff in particular, with appropriate auxiliary aids and services, including, but not limited to, qualified interpreters, when necessary to provide effective communication; in failing to maintain a list of "on-call" qualified sign language interpreters who are available 24 hours a day; in failing to provide plaintiff with a qualified sign language interpreter within a reasonable time after the request was made; in failing to assure that sign language services would be available 24 hours a day; in failing to give primary consideration to the requests of qualified individuals with hearing impairments, and plaintiff in particular, in determining what type of auxiliary aid or service is necessary; in failing to provide plaintiff with notice of the availability of auxiliary aids and services for qualified individuals with hearing impairments through the distribution of pamphlets, posters or other appropriate means, including, but not limited to copies of the publication "The Americans with Disabilities Act What You Should Know;" in failing to provide plaintiff with a sign language interpreter who was able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary, in failing to provide plaintiff with an interpreter able to sign to the deaf individual, and plaintiff in particular, or interpret in sign language to the deaf person what was being said by the hearing person and to voice to the hearing person what was being signed or said by the deaf individual, and plaintiff in particular; in failing to provide plaintiff with an

13

interpreter able to interpret in the language the plaintiff uses; and in failing to provide plaintiff with communication that was as effective as communication with others who are not deaf or hearing impaired.

61.   Defendants, their agents, servants and/or employees excluded plaintiff  from participation in, and denied him the benefits of its programs and activities, and subjected to discrimination solely on the basis of his disability at the time of hi arrests and period of confinement in failing and refusing to provide him with effective communication in the form of a qualified sign language interpreter, in failing to provide plaintiff with the same law enforcement services that the Defendants provide to other non-disabled persons, arrestees and detainees, in failing to provide plaintiff with telephonic or other effective communication devices such as TTY's/TDD's and videophones which would enable plaintiff to have the same opportunities for communication with counsel, family, and friends as were available to non-disabled arrestees and detainees, in failing to provide police officer assistance in making phone calls, in failing to provide plaintiff with a means to hear and otherwise be provided with information verbally and orally provided to non-disabled arrestees and detainees, in failing to provide plaintiff with the same opportunities to communicate with those in whose custody he was being held as were provided to non-disabled individuals and in causing plaintiff to be isolated and humiliated due to the lack of effective communication during his arrest and period of confinement.

62.   Defendant's failure to provide effective communication with and for Plaintiff as hereinbefore alleged constituted discrimination against plaintiff on the basis of disability in violation of  Title II of the ADA.

63.   Defendant's violations of Title II of the ADA mentioned above deprived

14

plaintiff of accommodations to which he was entitled and were intentional and the product of defendant's deliberate indifference to the strong likelihood that its policies and conduct would likely result in a violation of federally protected rights.

64.   The actions and omissions of Defendant and/or its agents, servants and employees occurred under circumstances giving rise to an inference of discrimination.

65.   Defendant, its agents, servants and/or employees intentionally discriminated against plaintiff and/or were deliberately indifferent towards plaintiff's rights.

66.   The intentional nature of the violations of the ADA on the part of the defendant County, its agents, servants, employees, police officers, and detectives and their deliberate indifference is demonstrated by the fact that their conduct, as hereinbefore alleged, constituted a direct violation of the provisions of the ADA, a statute in effect for more than 25 years prior to the events complained of herein, and its regulations as well as policies and procedures promulgated by the Police Commissioner or his authorized representatives.

67.   The County of Nassau is liable for the acts and omissions of its police officers and corrections officers pursuant to principles of agency and respondeat superior.

68.   As a direct and proximate result of defendant's discriminatory conduct. Plaintiff suffered adverse consequences and was caused to endure severe and extreme anxiety, humiliation, depression and emotional pain all to his damage.  Plaintiff  has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of discrimination.

69.   Plaintiff has thereby been damaged by the violation of the ADA on the part of the defendants, their agents, servants and/or employees and demands compensatory damages in

the sum of One Million Dollars and punitive damages in the sum of One Million Dollars and together with attorneys' fees and the costs and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION

VIOLATION OF THE NYS HUMAN RIGHTS LAW

(COMPENSATORY & PUNITIVE DAMAGES)

70.  Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

71.  At all times relevant to this action, the New York State Human Rights Law, Executive Law Article 15, was in full force and effect.

72.  The New York State Human Rights Law, at Section 296(2)(a) provides that it is an unlawful discriminatory practice for any person being the owner or employee of a public accommodation to refuse, withhold from or deny to a person with a disability any of the accommodations, advantages, facilities or privileges thereof.

73.  The New York State Human Rights Law, at Section 296(2)( c )(2) provides that discriminatory practices include a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services.

74. The foregoing provisions of the New York State Human Rights Law prohibit the defendant County of Nassau and its employees, including its police officers, from engaging in and subjecting any person with a disability to discrimination on the basis of disability.

75.  At all times relevant to this action, Plaintiff had a significant hearing

16

impairment and related speech impairment and is a "person with a disability" within the meaning of the NYS Human Rights Law.

76. Defendants County of Nassau and Police Officers and Detectives violated the New York State Human Rights Law in failing in failing to ensure that their services, programs and activities were accessible to qualified individuals with hearing impairments and plaintiff in particular through the use of appropriate auxiliary aids and services, including, but not limited to, the provision of qualified sign language interpreters and TDD's; in failing to provide qualified individuals with hearing impairments and plaintiff in particular, with the opportunity to place calls through the use of appropriate auxiliary aids and services, including, but not limited to, qualified sign language interpreters and TDDs and/or Videophones in a situation where the NYPD would allow a hearing person access to a telephone; in failing to provide qualified individuals with a hearing impairment, and plaintiff in particular, with appropriate auxiliary aids and services, including, but not limited to, qualified interpreters, when necessary to provide effective communication; in failing to maintain a list of "on-call" qualified sign language interpreters who are available 24 hours a day; in failing to provide plaintiff with a qualified sign language interpreter within a reasonable time after the request was made; in failing to assure that sign language services would be available 24 hours a day; in failing to give primary consideration to the requests of qualified individuals with hearing impairments, and plaintiff in particular, in determining what type of auxiliary aid or service is necessary; in failing to provide plaintiff with notice of the availability of auxiliary aids and services for qualified individuals with hearing impairments through the distribution of pamphlets, posters or other appropriate means, including, but not limited to copies of the publication "The Americans with Disabilities Act What You

Should Know;" in failing to provide plaintiff with a sign language interpreter who was able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary, in failing to provide plaintiff with an interpreter able to sign to the deaf individual, and plaintiff in particular, or interpret in sign language to the deaf person what was being said by the hearing person and to voice to the hearing person what was being signed or said by the deaf individual, and plaintiff in particular; in failing to provide plaintiff with an interpreter able to interpret in the language the plaintiff uses; and in failing to provide plaintiff with communication that was as effective as communication with others who are not deaf or hearing impaired.

77.   Defendants, their agents, servants and/or employees excluded plaintiff from participation in, and denied him the benefits of its programs and activities, and subjected to discrimination solely on the basis of his disability at the time of hi arrests and period of confinement in failing and refusing to provide him with effective communication in the form of a qualified sign language interpreter, in failing to provide plaintiff with the same law enforcement services that the Defendants provide to other non-disabled persons, arrestees and detainees, in failing to provide plaintiff with telephonic or other effective communication devices such as TTY's/TDD's and videophones which would enable plaintiff to have the same opportunities for communication with counsel, family, and friends as were available to non-disabled arrestees and detainees, in failing to provide police officer assistance in making phone calls, in failing to provide plaintiff with a means to hear and otherwise be provided with information verbally and orally provided to non-disabled arrestees and detainees, in failing to provide plaintiff with the same opportunities to communicate with those in whose custody he was being held as were

18

provided to non-disabled individuals and in causing plaintiff to be isolated and humiliated due to the lack of effective communication during his arrest and period of confinement.

78.  Defendants' failure to provide effective communication with and for Plaintiff as hereinbefore alleged constituted discrimination against plaintiff on the basis of disability in violation of the New York State Human Rights Law.

79.  Defendants' violations of the New York State Human Rights Law mentioned above deprived plaintiff of accommodations to which he was entitled and were intentional and the product of defendant's deliberate indifference to the strong likelihood that its policies and conduct would likely result in a violation of federally protected rights.

80.  The actions and omissions of Defendant and/or its agents, servants and employees occurred under circumstances giving rise to an inference of discrimination.

81.  Defendant, its agents, servants and/or employees intentionally discriminated against plaintiff and/or were deliberately indifferent towards plaintiff's rights.

82.  The intentional nature of the violations of the Human Rights Law on the part of the defendants and their deliberate indifference is demonstrated by the fact that their conduct, as hereinbefore alleged, constituted a direct violation of the provisions of the New York State Human Rights Law, a statute in effect for more than 15 years prior to the events complained of herein, as well as policies and procedures promulgated by the Police Commissioner or his authorized representatives.

83.  The defendants herein violated plaintiff's clearly established civil right to be free from discrimination on the basis of disability as well as plaintiff's clearly established constitutional rights to liberty, right to counsel, due process of law and equal protection of the

laws and fundamental right of access to the courts and are not entitled to qualified immunity with respect to the claims asserted herein.

84.   The defendant County of Nassau is liable for the acts and omissions of its police officers and corrections officers pursuant to principles of agency and respondeat superior.

85.   As a direct and proximate result of defendants' discriminatory conduct. Plaintiff suffered adverse consequences and was caused to endure severe and extreme anxiety, humiliation, depression and emotional pain all to his damage.  Plaintiff  has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of discrimination.

86.   Plaintiff has thereby been damaged by the violation of the New York State Human Rights Law on the part of the defendant County of Nassau, its agents, servants and/or employees and the defendant police officers and detective and plaintiff demands compensatory damages in the sum of One Million Dollars and punitive damages in the sum of One Million Dollars and together with attorneys' fees and the costs and disbursements of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION

VIOLATION OF THE NASSAU COUNTY HUMAN RIGHTS LAW

(COMPENSATORY & PUNITIVE DAMAGES)

87.   Plaintiff repeats and reiterates each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

88.   At all times relevant to this action, the Nassau County Human Rights Law was in full force and effect.

89.   The Nassau County Human Rights Law provides that it is an unlawful discriminatory practice for any public entity or person being the owner or employee of a public accommodation to refuse, withhold from or deny to a person with a disability any of the accommodations, advantages, facilities or privileges thereof.

90.   The Nassau County Human Rights Law includes as a public accommodation establishments dealing with goods or services of any kind.

91. The foregoing provisions of the Nassau County Human Rights Law prohibit the defendant County and its employees, including its police officers and detectives from engaging in and subjecting any person with a disability to discrimination on the basis of disability.

92.   At all times relevant to this action, Plaintiff had a significant hearing impairment and related speech impairment and is a "person with a disability" within the meaning of the NYC Human Rights Law.

93.   Defendants County of Nassau and its  Police Officers and Detective violated the Nassau County Human Rights Law in failing in failing in failing to ensure that their services, programs and activities were accessible to qualified individuals with hearing impairments and plaintiff in particular through the use of appropriate auxiliary aids and services, including, but not limited to, the provision of qualified sign language interpreters and TDD's; in failing to provide qualified individuals with hearing impairments and plaintiff in particular, with the opportunity to place calls through the use of appropriate auxiliary aids and services, including, but not limited to, qualified sign language interpreters and TDDs and/or Videophones in a situation where the NYPD would allow a hearing person access to a telephone; in failing to provide qualified individuals with a hearing impairment, and plaintiff in particular, with appropriate auxiliary aids and services,

21

including, but not limited to, qualified interpreters, when necessary to provide effective communication; in failing to maintain a list of "on-call" qualified sign language interpreters who are available 24 hours a day; in failing to provide plaintiff with a qualified sign language interpreter within a reasonable time after the request was made; in failing to assure that sign language services would be available 24 hours a day; in failing to give primary consideration to the requests of qualified individuals with hearing impairments, and plaintiff in particular, in determining what type of auxiliary aid or service is necessary; in failing to provide plaintiff with notice of the availability of auxiliary aids and services for qualified individuals with hearing impairments through the distribution of pamphlets, posters or other appropriate means, including, but not limited to copies of the publication "The Americans with Disabilities Act What You Should Know;" in failing to provide plaintiff with a sign language interpreter who was able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary, in failing to provide plaintiff with an interpreter able to sign to the deaf individual, and plaintiff in particular, or interpret in sign language to the deaf person what was being said by the hearing person and to voice to the hearing person what was being signed or said by the deaf individual, and plaintiff in particular; in failing to provide plaintiff with an interpreter able to interpret in the language the plaintiff uses; and in failing to provide plaintiff with communication that was as effective as communication with others who are not deaf or hearing impaired.

94.   Defendants, their agents, servants and/or employees excluded plaintiff  from participation in, and denied him the benefits of its programs and activities, and subjected to discrimination solely on the basis of his disability at the time of hi arrests and period of

confinement in failing and refusing to provide him with effective communication in the form of a qualified sign language interpreter, in failing to provide plaintiff with the same law enforcement services that the Defendants provide to other non-disabled persons, arrestees and detainees, in failing to provide plaintiff with telephonic or other effective communication devices such as TTY's/TDD's and videophones which would enable plaintiff to have the same opportunities for communication with counsel, family, and friends as were available to non-disabled arrestees and detainees, in failing to provide police officer assistance in making phone calls, in failing to provide plaintiff with a means to hear and otherwise be provided with information verbally and orally provided to non-disabled arrestees and detainees, in failing to provide plaintiff with the same opportunities to communicate with those in whose custody he was being held as were provided to non-disabled individuals and in causing plaintiff to be isolated and humiliated due to the lack of effective communication during his arrest and period of confinement.

95. Defendants' failure to provide effective communication with and for Plaintiff as hereinbefore alleged constituted discrimination against plaintiff on the basis of disability in violation of the Nassau County Human Rights Law.

96. Defendants' violations of the Nassau County Human Rights Law mentioned above deprived plaintiff of accommodations to which he was entitled and were intentional and the product of defendant's deliberate indifference to the strong likelihood that its policies and conduct would likely result in a violation of federally protected rights.

97. The actions and omissions of Defendant and/or its agents, servants and employees occurred under circumstances giving rise to an inference of discrimination.

98. Defendant, its agents, servants and/or employees intentionally discriminated

against plaintiff and/or were deliberately indifferent towards plaintiff's rights.

99.   The intentional nature of the violations of the Nassau County Human Rights Law on the part of the defendant County and defendant police officers and detective and their deliberate indifference is demonstrated by the fact that their conduct, as hereinbefore alleged, constituted a direct violation of the provisions of the Nassau County Human Rights Law, a statute in effect for more than 15 years prior to the events complained of herein, as well as policies and procedures promulgated by the Police Commissioner or his authorized representatives.

100.   The defendants herein violated plaintiff's clearly established civil right to be free from discrimination on the basis of disability as well as plaintiff's clearly established constitutional rights to liberty, right to counsel, due process of law and equal protection of the laws and fundamental right of access to the courts and are not entitled to qualified immunity with respect to the claims asserted herein.

101.   The defendant County of Nassau is liable for the acts and omissions of its police officers and corrections officers pursuant to principles of agency and respondeat superior.

102.   As a direct and proximate result of defendants' discriminatory conduct. Plaintiff suffered adverse consequences and was caused to endure severe and extreme anxiety, humiliation, depression and emotional pain all to his damage.  Plaintiff  has suffered, is suffering, and will continue to suffer irreparable injury as a result of Defendants' patterns and practices of discrimination.

103.   Plaintiff has thereby been damaged by the violation of the Nassau County Human Rights Law on the part of the defendant County of Nassau, its agents, servants and/or employees and defendant police officers and detective and plaintiff demands compensatory

damages in the sum of One Million Dollars and punitive damages in the sum of One Million

Dollars and together with attorneys' fees and the costs and disbursements of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION

### FALSE ARREST

(COMPENSATORY & PUNITIVE DAMAGES)

104.  Plaintiff repeats and realleges each and every allegation contained in the

preceding paragraphs of this complaint with the same force and effect as if more fully set forth at

length herein.

105.  On July 3, 2016, the defendant Nassau County Police Officers Collins and

Parents at the direction of defendant Detective Christie, in the County of Nassau, arrested plaintiff

without a warrant.

106. The defendant police officers and detective knew, or should have known that

the arrest was invalid because it was made without a warrant and in the absence of probable cause.

107.  Plaintiff informed defendants Collins, Parente and Christie that he was

innocent of the accusations being made against him.

108.  Despite the protestations of plaintiff that he had committed no crime,

defendants Collins, Parente and Christie proceeded to place plaintiff under arrest and caused him

to be confined and detained against his will and without his consent for approximately 5 hours.

109.  The aforesaid arrest and detention and confinement of the plaintiff was

effected without a warrant and was presumptively and factually unlawful.

110.  The aforesaid arrest and detention and confinement of the plaintiff was

effected without probable cause in that it was based upon pure speculation on the part of arresting

officers, detective and complaining witness that the defendant had committed a crime.

111.   The aforesaid arrest and detention and confinement of the plaintiff was also effected without probable cause in that it was based upon wrongful and incorrect information which could have been avoided had the defendants engaged in effective communication with plaintiff by securing and utilizing the services of a qualified sign language interpreter.

112.   The aforesaid arrest and detention and confinement of the plaintiff was also effected without probable cause in that it was motivated upon the discriminatory animus of defendants Collins, Parente and Christie with respect to plaintiff based on his hearing disability

113.   The arrest and detention and confinement of plaintiff took place without plaintiff's consent.

114.   At all times during the period of his arrest, detention and confinement, plaintiff was conscious of his confinement.

115.   The arrest and detention and confinement of plaintiff was not otherwise privileged because it was made without probable cause and without a warrant.

116.   At all times during their arrest, confinement and detention of plaintiff, defendant Police Officers Collins and Parente and Detective Christie were acting in their respective capacities as employees of the defendant County of Nassau and its police department.

117.   The defendant County of Nassau is liable for the wrongful, unlawful, and tortious acts and omissions of the defendant Police Officers and Detective pursuant to principles of vicarious liability and respondeat superior.

118.   The unlawful arrest, detention and confinement of plaintiff caused plaintiff loss of his freedom and liberty and has resulted in permanent and severe emotional, psychological

and physical harm to plaintiff, all to his damage.

119.  On or about October 3, 2016 and within 90 days of the occurrence and false arrest herein complained of, plaintiff caused a Notice of Claim to be filed with the Nassau County Attorney in accordance with Section 50-e of the General Municipal Law of the State of New York.

120.  More than 30 days have elapsed since the filing of such Notice of Claim and the defendant County of Nassau has failed and refused to settle and adjust said claim.

121.  Following receipt of a demand served by the Office of the County Attorney pursuant to General Municipal Law Section 50-h requiring plaintiff to submit to a hearing concerning plaintiffs claims, plaintiff's counsel informed the County Attorney's Office that a sign language interpreter would be required.  As a result, the 50-h hearing was adjourned in order for the County to arrange for a sign language interpreter to be present at the hearing.  The County Attorney has never rescheduled that hearing and has thereby waived the defendants' right to such a hearing.

122.  This action was  commenced within one year and 90 days of the occurrence of the false arrest herein complained of.

123.  Plaintiff is thereby entitled to compensatory damages in the sum of One Million Dollars and punitive damages in the sum of One Million Dollars.

### AS AND FOR A SIXTH CAUSE OF ACTION

CONSTITUTIONAL VIOLATIONS

(COMPENSATORY & PUNITIVE DAMAGES)

124.  Plaintiff repeats and realleges each and every allegation contained in the

preceding paragraphs of this complaint with the same force and effect as if more fully set forth at length herein.

125.  By their conduct in causing plaintiff's arrest and detention on and July 3, 2016 as aforesaid, the defendants acting under color of state law, deprived plaintiff of his constitutional rights to which he was and is entitled under the Constitutions of the United States and the State of New York, including the Fourth Amendment right to be free from unlawful search and seizure and rights of life, liberty, the pursuit of happiness.

126. The actions described herein clearly violate established statutory and constitutional norms and it was not objectively reasonable for the defendants involved to have believed their conduct could have been legal.

127.  At all times while defendants Collins, Parente and Christie were engaging in the aforesaid retaliatory practices against plaintiff, they were acting in their capacities as employees of the defendant County of Nassau and its police department.

128.  As a direct and proximate result of Defendants' unlawful conduct as hereinbefore alleged, Plaintiff suffered adverse consequences and was caused to endure severe extreme humiliation, emotional pain and trauma, all to his detriment and damage for which the defendants are liable to plaintiff pursuant to 42 USC 1983.

129.  Plaintiff is thereby entitled to compensatory damages in the sum of One Million Dollars and punitive damages in the sum of One Million Dollars.

### AS AND FOR A SEVENTH CAUSE OF ACTION

### (ASSAULT AND BATTERY)

130.  Plaintiff repeats and realleges each and every allegation contained in the

preceding paragraphs of this complaint with the same force and effect as if more fully set forth at length herein.

    131.  During the time that plaintiff was being arrested and continuing through the time he was in custody and until he was released, the defendants Collins, Parente and Christie threatened, assaulted, battered and physically injured plaintiff without basis or authority to do so.

    132.  As a direct and proximate result of Defendants' unlawful conduct as hereinbefore alleged, Plaintiff suffered adverse consequences and was caused to endure severe extreme humiliation, emotional pain and trauma, all to his detriment and damage.

    133.  Plaintiff is thereby entitled to compensatory damages in the sum of One Million Dollars and punitive damages in the sum of One Million Dollars.

    WHEREFORE, Plaintiff demands judgment against the defendants in the sum of One Million Dollars in Compensatory Damages and One Million Dollars in Punitive Damages on each of the First through Seventh Causes of Action, all with interest from July 3, 2016 and the costs, disbursements and attorneys fees incurred in the prosecution of this action.

JURY DEMAND

    Plaintiff demands Trial by Jury of all causes of action so triable.

Dated: Syosset, NY
      October 2, 2017

                    /s/ Ralph G. Reiser
                    RALPH G. REISER, ESQ. (rr6700)
                    Attorney for Plaintiff
                    3 Walnut Drive
                    PO Box 171
                    Syosset, NY 11791
                    516-496-9745
                    516-496-9754 TDD/FAX
                    516-638-6130 VP
                    Reiserlaw@aol.com